UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WILLIAM T. JONES,<br>    Plaintiff, | : | |
| | : | |
| v. | : | CASE NO. 3:09-cv-747 (VLB) |
| | : | |
| THERESA C. LANTZ, et al.,<br>    Defendants. | : | |
| | : | May 31, 2011 |

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [Doc. #77]

The plaintiff, William T. Jones, currently incarcerated at Garner Correctional Institution in Newtown, Connecticut, commenced this civil rights action *pro se*. He asserts two claims of use of excessive force, one claim of deliberate indifference to serious medical needs and a supplemental state law claim for battery. The defendants have filed a motion for summary judgment. For the reasons that follow, the defendants' motion is GRANTED as to the claims of deliberate indifference against defendants Wright, Gilbert, Little, Saylor, Williams, Massop, Prouty and Overstreet, and DENIED as to the claims of deliberate indifference against defendants Wilbur, Hill and Savoie and the claims of excessive force against defendants Torangeau, St. John, Sterling and Siwicki.

*I. Standard of Review*

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is therefore entitled to judgment as a matter of law. *See* Rule 56(a), Fed. R. Civ. P.; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The moving party may

satisfy this burden "by showing – that is pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (internal quotation marks and citations omitted). Once the moving party meets this burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," *Anderson*, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor in order to defeat the motion for summary judgment. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

When reviewing the record, the court resolves all ambiguities and draws all permissible factual inferences in favor of the party against whom summary judgment is sought. *Patterson v. County of Oneida, NY*, 375 F.3d 206, 218 (2d Cir. 2004). If there is any evidence in the record on a material issue from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is inappropriate. *Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004). However, "'[t]he mere of existence of a scintilla of evidence in support of the [plaintiff's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [plaintiff].'" *Dawson v. County of Westchester*, 373 F.3d 265, 272 (2d Cir. 2004) (quoting *Anderson*, 477 U.S. at 252)).

## II. Facts[1]

At all times relevant to the incidents underlying this action, the plaintiff was confined at Northern Correctional Institution in Somers, Connecticut. In the morning of May 10, 2006, the plaintiff attended a disciplinary hearing. The hearing was held in a special disciplinary hearing room containing a table and several chairs. Two of the walls are clear, enabling the Unit Control Officer to see into the room. The mechanism used to open the door to the hearing room is in a remote location.

Defendants Tourangeau, St. John and Sterling were present at the hearing. When the plaintiff was found guilty of the disciplinary infraction, he became angry. The plaintiff was ordered to return to his cell. The plaintiff, accompanied by defendants Tourangeau and St. John, walked toward the door and faced it, waiting for the door to be opened. The plaintiff did not stand quietly waiting for the door to open; rather he was agitated. Defendant St. John ordered the plaintiff to be quiet. The plaintiff turned toward defendant St. John. In response, defendant St. John secured the plaintiff's back against the door. Defendant Tourangeau turned the plaintiff around so he was facing the door. While the plaintiff was being secured, the hearing room door opened. It is not clear from the videotape whether the plaintiff walked out of the room or if the plaintiff and defendants Tourangeau and St. John all tumbled out of the room and onto the

---

[1] The facts are taken from the Local Rule 56(a) Statements filed by the parties along with the attached exhibits.

3

tier. Other correctional staff responded to assist in securing the plaintiff.

The plaintiff was taken to the medical unit where he was examined by defendant Nurse Wilbur.[2] Defendant Wilbur examined the plaintiff's injuries and applied a band-aid to a laceration on his left wrist. The plaintiff complained that his right wrist hurt, but no specific treatment was provided. The plaintiff was escorted to the restrictive housing unit where defendant Nurse Savoie inspected his in-cell restraints. The plaintiff told defendant Savoie that he thought his right wrist was broken. Defendant Savoie noted swelling of the right wrist or hand. Defendant Savoie provided ice for the swelling and said she would check on his condition later.

Defendants Little, Saylor, Williams, Massop and Prouty were correctional staff assigned to the restrictive housing unit on May 10, 2006. Defendant Prouty checked on the plaintiff periodically. Defendant Prouty called the medical unit on the plaintiff's behalf. Defendant Overstreet, a mental health staff member, toured the restrictive housing unit. Defendant Nurse Hill[3] inspected the plaintiff's restraints at approximately 8:00 p.m. on May 10, 2006. The plaintiff slept during the third shift and did not request any medical treatment.

Defendant Nurse Gilbert inspected the plaintiff's restraints on May 11, 2006. Defendant Dr. Wright examined the plaintiff on May 11, 2006, and ordered x-rays

---

[2] The plaintiff incorrectly identified this defendant in his amended complaint as Wilburt.

[3] The plaintiff incorrectly named defendant Hill as Hill Sessa.

4

of the plaintiff's right hand. He did not order that the plaintiff's restraints be removed. The x-ray revealed a comminuted fracture of the right radius, the most commonly broken bone in the arm. Treatment for a fractured radius may include rest, elevation, cold compresses, splinting, casting, a shoulder sling and pain medication. If the bone is not properly aligned, surgery may be required.

The plaintiff was brought to the emergency room of an outside hospital where a cast and ace bandage were applied to restrict movement and assist in the healing process. When he returned to Northern Correctional Institution, the plaintiff was housed in the infirmary to enable medical staff to monitor his recovery. The plaintiff removed bandages and failed to take his medication. The plaintiff states that he removed only the ace bandage, not the cast. Medical records indicate that he plaintiff removed both. Subsequent x-rays revealed that the fracture was not healing properly. On June 6, 2006, the plaintiff underwent a surgical procedure to insert a metal plate at the site of the fracture.

The plaintiff's stitches were removed on June 23, 2006. On that day, the plaintiff requested a shower. Defendant Siwicki and other correctional officers entered the plaintiff's cell and explained the medical restraint protocol that would be used to escort him to the shower. The plaintiff refused to be restrained. The plaintiff states that correctional staff wanted to use hard restraints instead of the soft restraints required by the medical protocol. The defendants state that they were complying with the medical protocol. The plaintiff became angry and began shouting.

Defendant Siwicki states that he observed the plaintiff spit at another correctional officer in the cell.  The plaintiff denies spitting.  Correctional staff immediately began stabilizing the plaintiff face down on his bunk.  During this process, the plaintiff's head hit the cell wall.  A spit guard was applied and the plaintiff was taken to the medical unit for assessment of his injuries.  Dr. Blanchette approved in-cell restraint status so long as soft restraints were used on the plaintiff's right wrist.  The plaintiff was secured in soft restraints and escorted to the restrictive housing unit.

### III.  Discussion

The remaining defendants in this action are Darrol Little, Brian Siwicki, Melvin Saylor, Yolanda Sterling, Dr. Carson Wright, Mark Tourangeau, Cynthia R. Gilbert, Barbara Savoie, Paul Wilbur, Nancy Hill, Dorothy Overstreet, Ellen St. John, Williams, Massop and Scott Prouty.  The plaintiff brings two excessive force claims and a claim of deliberate indifference to serious medical needs.  He contends that defendants Tourangeau, St. John and Sterling are involved in the May 10, 2006 excessive force claim and defendant Siwicki used excessive force on June 23, 2006.  He further contends that defendants Little, Saylor, Wright, Gilbert, Savoie, Wilbur, Hill, Overstreet, Williams, Massop and Prouty were deliberately indifferent to his broken wrist.

### A.    *Use of Excessive Force on May 10, 2006*

The use of excessive force against an inmate may constitute cruel and unusual punishment in violation of the Eighth Amendment, even if the inmate

does not suffer a serious injury. *Wilkins v. Gaddy*, ___ U.S. ___, 130 S. Ct. 1175, 1176 (2010) (citing *Hudson v. McMillian*, 503 U.S. 1, 4 (1992)). The Court's inquiry must focus not on whether the inmate sustained a certain level of injury, but "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 1178 (internal quotation marks and citation omitted). Although the extent of the injury is not the focus of the inquiry, it can provide information regarding the amount of force used. Unless the use of force is "repugnant to the conscience of mankind," a *de minimis* use of force will not be cognizable under the Eighth Amendment. *Id.*

An Eighth Amendment claim has two components, one objective, the other subjective. The objective component focuses on the harm done by the defendant in light of contemporary standards of decency. The subjective component involves the defendant's motive. The plaintiff must show that the defendant "had the necessary level of culpability, shown by actions characterized by wantonness in light of the particular circumstances surrounding the challenged conduct." *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009) (internal quotation marks and citations omitted). Whenever the defendants use force maliciously and sadistically, however, they always violate contemporary standards of decency regardless of the injury suffered. *See id.* at 269.

Factors relevant to whether the force used was necessary under the circumstances "or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it

7

occur" include the extent of the injury suffered, "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Hudson*, 503 U.S. at 7 (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)).

In addition, prison officials "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). This deference applies both to actions taken in response to prison unrest or confrontations with inmates and to preventative measures taken to reduce such incidents. *See Whitley*, 475 U.S. at 322.

As a result of the May 10, 2006 use of force, the plaintiff suffered a broken wrist. Defendants Tourangeau and St. John were directly involved in the use of force and defendant Sterling failed to intercede to prevent the use of excessive force.

The defendants argue that the force used was *de minimis* and that they merely reacted to a disruptive inmate. In response, the plaintiff concedes that he was speaking but denies acting in a threatening or disruptive manner. He also cites later actions by defendants Tourangeau and St. John to demonstrate a wanton state of mind. Although the defendants have provided videotapes of the incidents, the tapes do not include an audio component and it is difficult to

determine from the angle of the camera whether the plaintiff was threatening defendant St. John and whether he walked out of the hearing room or fell out with defendants Tourangeau and St. John. The Court cannot make credibility determinations on a motion for summary judgment. Thus, the Court cannot determine which version of the incident is accurate and whether the force used was reasonable. The defendants' motion for summary judgment is therefore denied as to the first excessive force claim.

### B. Use of Excessive Force on June 23, 2006

The defendants move for summary judgment as to this claim on two grounds. First, they argue that the plaintiff did not exhaust his institutional remedies with regard to the June 23, 2006 incident. Second, they contend that defendant Siwicki's actions do not constitute use of excessive force.

#### 1. Exhaustion of Institutional Remedies

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), requires an inmate to exhaust "administrative remedies as are available" before bringing an "action . . . with respect to prison conditions." The Supreme Court has held that this provision requires an inmate to exhaust administrative remedies before filing any type of action in federal court, regardless of whether the inmate may obtain the specific relief he desires through the administrative process. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). Inmates must properly exhaust their administrative remedies. This requirement includes complying with all procedural requirements, including filing deadlines, so the inmate's issue is reviewed on the merits. *See*

9

*id.* at 90, 94-95.

The administrative directive in effect at the time of the incident provided that the inmate grievance process could be used to address individual employee actions and matters relating to conditions of care and supervision. *See* Defs.' Local Rule 56(a)1 Statement, Attachment B, Administrative Directive 9.6, § 6(A), effective March 5, 2003. The grievance procedures would encompass the plaintiff's claim of use of excessive force.

Directive 9.6, Section 9, requires that the inmate attempt to resolve the matter informally before filing a grievance. If this process is unsuccessful, or the inmate has not received a response to his attempt at informal resolution, Section 10 allows him to proceed to the next step and file a grievance. Section 10(G) requires that the grievance be filed within thirty days of the occurrence giving rise to the grievance. Section 16 provides that an inmate may file a Level 2 Grievance if he does not receive a timely response to the Level 1 grievance. Section 12 provides that all grievances, regardless of the level, must be placed in the Grievance Box to be collected by the Grievance Coordinator.

In support of their motion for summary judgment, the defendants have provided the affidavit of Counselor/Grievance Coordinator Scott Petersen. Counselor Petersen states that he searched all grievances filed at Northern Correctional Institution in 2006 and was unable to locate any grievance filed by the plaintiff regarding this incident. In opposition to the motion for summary judgment, the plaintiff has submitted copies of notes he received from Counselor

Petersen in response to his inquiries whether Counselor Petersen had placed the plaintiff's grievances in the collection box. Although the plaintiff did not submit copies of the grievances, the dates on the notes correspond with the dates that the plaintiff states he submitted a grievance regarding this incident at the various levels.

As the plaintiff had no control of the grievance forms after he gave them to Counselor Petersen, the Court finds that the plaintiff did all he could to file a grievance and that in effect he exhausted his institutional remedies with regard to this incident.

### 2. Use of Force

The defendants argue that defendant Siwicki subdued the plaintiff after observing the plaintiff spit at another officer. They deny that defendant Siwicki deliberately hit the plaintiff's head against the wall. The plaintiff denies spitting at anyone. He states that he objected to use of hard restraints and contends that defendant Siwicki used excessive force because the plaintiff threatened to file an institutional grievance. Use of force could be justified if the plaintiff spit at a correctional officer. However, the affidavits of the parties dispute whether this occurred. As the Court cannot determine credibility on a motion for summary judgment, the motion is denied as to the second excessive force claim as well.

### C. Deliberate Indifference to Serious Medical Need

The plaintiff contends that the defendants were deliberately indifferent to his broken wrist because he had to wait thirty hours before he was seen by a

doctor and sent for x-rays. He alleges that his complaints that his wrist was broken were ignored.

Deliberate indifference by prison officials to a prisoner's serious medical need constitutes cruel and unusual punishment in violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To state such a claim, the plaintiff must allege facts demonstrating sufficiently harmful acts or omissions and intent to either deny or unreasonably delay access to needed medical care or the wanton infliction of unnecessary pain by prison personnel. *Id.* at 104-06.

Because mere negligence will not support a section 1983 claim, not all lapses in prison medical care constitute a constitutional violation. *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003). In addition, inmates are not entitled to the medical treatment of their choice. *See Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986). Mere disagreement with prison officials about what constitutes appropriate care does not state a claim cognizable under the Eighth Amendment. "So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998). The conduct complained of must "shock the conscience" or constitute a "barbarous act." *McCloud v. Delaney*, 677 F. Supp. 230, 232 (S.D.N.Y. 1988). In addition, the fact that a prison official did not alleviate a significant risk that he should have but did not perceive does not constitute deliberate indifference. *See Farmer v. Brennan*, 511 U.S. 825,

838 (1994).

There are both subjective and objective components to the deliberate indifference standard. *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994), *cert. denied sub nom. Foote v. Hathaway*, 513 U.S. 1154 (1995). Objectively, the alleged deprivation must be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The condition must produce death, degeneration or extreme pain. *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). Subjectively, the defendant must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of his actions or inactions. *Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006).

The Second Circuit has identified several factors that are highly relevant to the inquiry into the seriousness of a medical condition. For example, a medical condition significantly affecting the inmate's daily activities or causing chronic and significant pain or the existence of an injury a reasonable doctor would find important constitutes a serious medical need. *See Chance v. Armstrong*, 143 F.3d 698, 702 (2d. Cir. 1998). In addition, where the denial of treatment causes the plaintiff to suffer a permanent loss or life-long handicap, the medical need is considered serious. *See Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000).

### 1. Medical Staff

Defendants Wright, Gilbert, Savoie, Wilbur and Hill are members of the medical staff.

The Court cannot determine as a matter of law whether the plaintiff's

fractured wrist and the delay in treating it constitutes an objectively serious medical need. The plaintiff alleges that the fracture caused him significant pain and a doctor would find a fracture important. Other courts considering the question have reached different conclusions. *Compare Sutherland v. Allison*, No. 10-11673, 2011 WL 412632, at *4 (11th Cir. Feb. 9, 2011) (fractured arm that requires surgery and subsequent hospital stay is an objectively serious medical need); *Andrews v. Hanks*, 50 Fed. Appx. 766, 769 (7th Cir. 2002) (allegation of broken wrist states serious medical need) *with Haley v. Feinerman*, 168 Fed. Appx. 113, 117 (7th Cir. 2006) (four month delay in operating on inmate to repair broken arm did not constitute deliberate indifference to serious medical need). For purposes of deciding this motion, the Court assumes that the plaintiff satisfies the objective component of the deliberate indifference test.

Defendant Wilbur treated the plaintiff in the medical unit immediately following the incident. The videotape reveals that the plaintiff repeatedly told defendant Wilbur that his right wrist was painful and he thought there was something wrong. Although defendant Wilbur put a band-aid on a laceration on the plaintiff's left arm, he concedes that he did not treat the right wrist.

Defendant Hill answered the call from custodial staff. She waited until the evening, when she checked on the plaintiff's restraints, to address his complaints that his wrist was broken. The parties disagree whether defendant Hill entered the cell and checked the plaintiff's arm or merely looked in the cell window.

Defendant Savoie checked the plaintiff's restraints when he was placed in

in-cell restraints. The plaintiff told her that his wrist was injured and that he was unable to make a fist. Defendant Savoie noted that the plaintiff's right hand was swollen and ordered ice. She told him that she would return to check on him later in the day. She never returned.

Defendants Wilbur, Hill and Savoie all knew that the plaintiff thought his right wrist was broken and that he was in pain. Defendant Wilbur did not examine the wrist. Defendant Savoie understood the plaintiff's concerns and failed to return to check on the wrist after ice had been applied. It is unclear whether defendant Hill examined the wrist at all. As medical professionals, these defendants should have appreciated the pain and possibility that the plaintiff had a broken wrist. There are genuine issues of material fact as to whether these defendants understood the substantial risk that the plaintiff would suffer serious harm as a result of their inactions. Accordingly, the defendants' motion for summary judgment is denied as to defendants Wilbur, Hill and Savoie.

Defendant Gilbert saw the plaintiff on May 11, 2006, and referred him to Dr. Wright for treatment. Defendant Wright could not determine whether the plaintiff suffered from a sprain or fracture and ordered x-rays. When the x-rays revealed a fracture, he sent the plaintiff to an outside hospital for a cast. Defendants Gilbert and Wright were not indifferent to the plaintiff's injury. They took immediate action.

The plaintiff argues that defendants Gilbert and Wright also should have ordered that hard restraints not be used on his right wrist while it was being

15

evaluated. Neither defendant knew whether the plaintiff's wrist was broken until after the x-rays were reviewed. The Court concludes that their failure to preclude use of hard restraints before that time constitutes, at most, negligence and is not cognizable under section 1983. The defendants' motion for summary judgment is granted as to the claims against defendants Wright and Gilbert.

### 2. *Custody Staff*

Defendants Little, Saylor, Williams, Massop and Prouty were on duty in the restrictive housing unit on May 10, 2006. Defendant Overstreet, a social worker, toured the restrictive housing unit. These defendants were not medical professionals.

The plaintiff contends that he told each of these defendants that his wrist was broken and that he needed medical treatment. The defendants have provided affidavits stating that they were not aware that the plaintiff's wrist was broken until sometime after it was treated and that the plaintiff did not ask them to contact the medical unit. Their responses to the plaintiff's requests for admission, however, disturbingly contradict the statements in the affidavits.

Nevertheless, even if these defendants were aware that the plaintiff thought his wrist was broken and wanted medical treatment, they were not trained medical professionals. All were aware that defendant Savoie had checked the plaintiff when he arrived in the unit, observed swelling, provided ice for his hand in response to his complaints of pain and assumption that his wrist was broken, and stated that she would return to check on his condition. In addition,

16

defendant Prouty contacted the medical unit in response to the plaintiff's complaints of pain and request for treatment.

It is well accepted in this Circuit that prison officials may reasonably rely on the opinions of medical staff. *See Rodriguez v. McGinnis*, No. 98-CV-6031CJS, 2004 WL 1145911, at *18 (W.D.N.Y. May 18, 2004) (citing cases). In light of the law and the fact that these defendants were aware that the plaintiff had been seen by defendant Savoie, the Court concludes that the plaintiff has not demonstrated a genuine issue of material fact regarding the subjective prong of the deliberate indifference test. The defendants' motion for summary judgment is granted as to the claims against defendants Little, Saylor, Williams, Massop, Prouty and Overstreet.

### D.  *Qualified Immunity*

The defendants involved in the excessive force claims and the custodial staff involved in the deliberate indifference claim also argue that they are protected by qualified immunity. The Court has granted the defendants' motion to dismiss the deliberate indifference claim as to the custodial staff. Thus, the Court will consider this argument only as it applies to the excessive force claims.

The doctrine of qualified immunity protects government officials from liability for damages caused by the performance of discretionary official functions if their conduct does not violate a clearly established right of which a reasonable person would have been aware. *See Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007).

17

When considering a claim of qualified immunity, the Court considers two questions: first, whether, construing the facts in favor of the non-moving party, there is a violation of a constitutionally protected right; and second, whether, considering the facts of the case before it, that right was clearly established at the time of the incident. Qualified immunity is warranted unless the state official's conduct violated a clearly established constitutional right. *See Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 813, 815-16 (2009) (setting forth qualified immunity test and holding that a court need not consider the questions in any particular order). To evaluate whether a right is clearly established, the Court must determine whether it would be clear to a reasonable correctional official that his conduct in these circumstances was unlawful. *See Saucier v. Katz*, 533 U.S. 194, 202 (2001). The analysis focuses on cases from the Supreme Court and Second Circuit. *See Williams v. Greifinger*, 97 F.3d 699, 706 (2d Cir. 1996).

An inmate's right to be free from the use of excessive force was "clearly established" at the time of the alleged incident. *See, e.g., Hudson*, 503 U.S. at 9-10. The duty to protect inmates from harm also was clearly established. *See Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). Whether the defendants could reasonably have believed that their actions were warranted depends on the resolution of the issues of fact identified above. Thus, the defendants' motion for summary judgment is denied on this ground.

E. *Supplemental State Law Claim*

The plaintiff includes a supplemental state law claim for battery. The

18

defendants argue that, because summary judgment should be granted in their favor on all other claims, the Court should decline to exercise supplemental jurisdiction over the battery claim. The Court has denied the defendants' motion with regard to several claims. Accordingly, the motion for summary judgment is denied as to the state law claim.

### IV. Conclusion

Based upon the foregoing reasoning, the defendants' Motion for Summary Judgment [Doc. #77] is GRANTED as to the claims against defendants Wright, Gilbert, Little, Saylor, Williams, Massop, Prouty and Overstreet. The motion is DENIED in all other respects.

                                            IT IS SO ORDERED.

                                            /s/
                                     Vanessa L. Bryant
                                     United States District Judge

Dated at Hartford, Connecticut: May 31, 2011.